NICHOLAS A. CARLIN (SB 112532)
nac@phillaw.com
BRIAN S. CONLON (SB 303456)
bsc@phillaw.com
PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
39 Mesa Street, Suite 201
The Presidio
San Francisco, CA   94129
Telephone:  415-398-0900
Facsimile:   415-398-0911

Leonard B. Simon (CSB #58310)
The Law Offices of Leonard B. Simon
655 West Broadway, Suite 1900
San Diego, CA  92101
Tel:    619-338-4549
Fax:   619-231-7423
Email: lsimon@rgrdlaw.com

REBECCA A. PETERSON (SB 241858)
rapeterson@locklaw.com
ROBERT K. SHELQUIST
rkshelquist@locklaw.com
LOCKRIDGE GRINDAL NAUEN P.L.L.P
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Tel:    612-339-6900
Fax:   612 339-0981

Additional Counsel Listed on Signature Page

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CANDACE HIDDLESTONE and JULIE HEDGES, each individually and on behalf of all those similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>THE HONEST COMPANY, INC,<br><br>        Defendant. | Case No:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1.    From at least September 20, 2012 through the present (the "Class Period"), The Honest Company, Inc. ("Defendant" or "Honest") deceptively and misleadingly labeled, advertised and marketed its products, including the following nine Honest products: Honest Diapers, Honest Hand Soap, Honest Dish Soap, Honest Auto Dishwasher Gel, Honest Multi-Surface Cleaner, Honest Shampoo and Body Wash, Honest Dishwasher Packs, Honest Conditioning Detangler, and Honest Bubble Bath (collectively the "Honest Products") as natural, when in fact, the Honest Products contain non-natural ingredients.

2.    Plaintiffs Candace Hiddlestone and Julie Hedges bring this class action lawsuit against Defendant, each individually and on behalf of a nationwide class (the "Honest Natural Products Class") that includes other similarly situated purchasers of the Honest Products who experienced the same or substantially similar harm as a result of Defendant's false advertising.

3.    Defendant's conduct harms consumers by inducing them to purchase and consume the Honest Products on the false premise that the products are natural and by implicitly promising that the products are manufactured, marketed and sold "honestly."

4.    Plaintiffs Hiddlestone and Hedges and the Honest Natural Products Class paid a premium for certain Natural Products over comparable products, based on Defendant's representations that the Natural Products were natural. Instead of receiving products that were natural, Plaintiffs Hiddlestone and Hedges and the Honest Natural Products Class received products that, contrary to Defendant's representations, contained synthetic, non-natural ingredients, such as Methylisothiazolinone, Cocamidopropyl Betaine, and Phenoxyethanol. Not only has Defendant admitted that these three ingredients are synthetic, but the

Environmental Working Group has rated these chemicals as either "High Hazard" or "Moderate Hazard" chemicals.

## JURISDICTION AND VENUE

5.     The Court has subject matter jurisdiction over the individual and class claims asserted herein pursuant to 28 U.S.C. § 1332, as amended in 2005 by the Class Action Fairness Act, because: (A) the amount in controversy in this class action exceeds $5,000,000, exclusive of interests, costs, and attorneys' fees; and (B) a substantial number of the members of the proposed class are citizens of a state different from that of Defendant.  In addition, Plaintiffs Hiddlestone and Hedges are citizens of states different from that of Defendant, a Delaware Corporation.

6.     The Court has personal jurisdiction over Defendant.  Honest maintains headquarters in Santa Monica, California and conducts substantial and continuous business throughout the State of California.

7.     Venue is proper pursuant to 28 U.S.C. § 1391(a) & (b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, and because Defendant conducts a substantial part of its business in this District.

## PARTIES

8.     Plaintiff Candace Hiddlestone is a resident of La Jolla, California and an individual consumer.  During the Class Period, Ms. Hiddlestone purchased Honest Diapers, Honest Dishwasher Packs, Honest Conditioning Detangler, and Honest Shampoo and Body Wash.  As with all members of the Honest Natural Products Class, Ms. Hiddlestone paid a premium for these Natural Products based upon the representation that the Natural Products are natural, in excess of the price for comparable products not purporting to be natural.

COMPLAINT

9. Plaintiff Julie Hedges is a resident of Columbus, Georgia and an individual consumer. During the Class Period, Ms. Hedges purchased Honest Hand Soap, Honest Dish Soap, Honest Bubble Bath, Honest Auto Dishwasher Gel, and Honest Multi-Surface Cleaner. Hedges purchased products online and direct through Honest, as well as at a local retail Target shopping outlet. As with all members of the Honest Natural Products Class, Ms. Hedges paid a premium for these Natural Products based upon the representation that the Natural Products are natural, in excess of the price for comparable products not purporting to be natural.

10. Defendant The Honest Company, Inc. is a Delaware corporation headquartered in Santa Monica, California. The company markets its products online through the website <https://www.honest.com> ("Honest.com") and operates an active storefront on Amazon.com selling the Honest Products. Defendant maintains supply chain control over the manufacture of the Honest Products, operates as an online retailer, and distributes the Honest Products, business-to-business, to major retail outlets throughout the U.S. and Canada.

## FACTUAL ALLEGATIONS

### Defendant's Nationwide Distribution

11. California has significant contacts to the class claims asserted in the Complaint.

12. On information and belief, Defendant has designed, controlled, and overseen a national production and distribution network from the company's headquarters in California.

13. According to the company's public statements, Defendant contracts with third-party manufacturing and supplier facilities to produce and distribute the Honest Products. On information and belief, Defendant controls its entire supply chain from its company headquarters in California.

14.    Defendant sells the Honest Products online via Honest.com, a direct-to-consumer e-commerce website.  On information and belief, Defendant controls its entire e-commerce operation from its company headquarters in California.

15.    Defendant actively generates traffic to its website through promotions on Facebook.com and Twitter.com, on information and belief, operated from the company's headquarters in California.

16.    Defendant uploads Honest Product videos to its YouTube account, on information and belief, operated from the company's headquarters in California.

17.    Defendant also sells the Honest Products through a popular online storefront in the Amazon.com marketplace.  On information and belief, Honest controls its Amazon storefront from its company headquarters in California.

18.    Defendant distributes the Honest Products, business-to-business, for purchase in big box chain retail locations nationwide, including Target, Costco Wholesale Corporation, Whole Foods Market, Inc., Gelson's Markets, and Buy Buy Baby, Inc., across the United States.  On information and belief, Defendant controls national distribution of the Honest Products from its company headquarters in California.

### **Defendant's Long-Term Advertising Campaign**

19.    Defendant created, designed, and since at least 2012, carried out a long-term, national advertising campaign from the company's California headquarters.

20.    Defendant's advertising campaign has been sufficiently lengthy in duration, and widespread in dissemination, such that it would be unrealistic to require the plaintiffs to plead relying upon each advertised misrepresentation.

21.    Defendant's advertising campaign has been widespread, continuous, and contained in various media, labels, and point-of-sale displays.

COMPLAINT

22.     Defendant's advertising campaign has included and includes traditional media and new media, such as print circulars, television advertisements, television appearances, social media promotions, sales copy on its own website, and sales copy on third party marketplace websites.

23.     Defendant has engaged in this long-term advertising campaign to convince potential customers, first, that the company's advertising representations should be taken literally, because those claims are "honest," and second, that the company's products are literally "natural" and "effective."

24.     Representative samples of the campaign are contained herein.

### *Defendant's Overarching Brand Advertising*

25.     As part of the long term advertising campaign, Defendant at all times has advertised, and continues to advertise, itself as a consumer products company that is centrally defined by selling natural, effective products and publishing honest advertising claims.

26.     As a representative example, Defendant advertises its company as "Natural, Safe, Beautiful, Effective," on its own website, including in the following screenshot from Honest.com captured on August 14, 2015:



Join the Honest Company
Natural · Safe · Beautiful · Effective
Products for Baby, Family & Home

27. As another representative example, on August 18, 2015, Defendant's celebrity co-founder Jessica Alba and CEO Brian Lee appeared jointly, in their capacities as executive officers for Defendant, for a company feature on CNN Money that broadcast the same advertising representations, as follows:



COMPLAINT

1      28.    Defendant advertises the company's product lines, in general, as

2  "effective" and "safe" in offline point-of-sale locations as well, including airport

3  kiosks, as demonstrated by the following picture from July 2015:



22      29.    As part of the long term advertising campaign, Defendant includes

23  its company's name, in lower case, on its product labels, specifically as part of

24  each of the product names: "honest hand soap," "honest dish soap," "honest

25  diapers," "honest multi-surface cleaner," "honest dishwasher packs," "honest

26  dishwasher gel," "honest shampoo & body wash," "honest conditioning

27  detangler," and "honest bubble bath."

30.     As part of its advertising campaign, Defendant further amplifies its representations with the "honestly FREE guarantee," which is displayed on product labels and displayed at Honest.com, Defendant's Amazon storefront, and partner websites including Target.com.

31.     The "honestly FREE guarantee" states: "Providing clear, credible, transparent information.  No smoke and mirrors.  No confusion."

32.     Defendant further describes itself, its advertising, and its numerous product lines as follows on Honest.com:

> "Free from fraud or deception, truthful – We believe in transparency and that applies to everything – from what we put into our products and how they are made to our internal operations and how we do things.

> "Genuine, real – The Honest Company was started by parents for parents. We are real tangible people, parents that understand what families need and we want to deliver on that – not some big corporation with no social consciousness that only cares about making a profit.

> "Respectable, praiseworthy – We are people with integrity and we intend on not only doing things right, but also going above and beyond to earn your respect and loyalty – making you so delighted you want to shout it from a rooftop (or tweet it from your iPhone).

> "Humble – We know no one can be absolutely perfect and a part of our commitment to honesty means we'll admit our flaws. It's pretty scary, but we think it's a good way to keep us focused on constant improvement."

33.     Defendant's Chief Creative Officer and celebrity co-founder Jessica Alba serves as the public face of the company.

34.    To further advertise the company image as selling natural products, Ms. Alba has crafted public statements about Defendant to convince the public that Defendant is leading a movement to protect consumers from products that contain chemicals.

35.    Ms. Alba's celebrity status ensures the company's claims are reported by numerous media outlets.

36.    In this way, Ms. Alba has coordinated her media appearances with Defendant's long-term advertising campaign.

37.    On June 18, 2015, Ms. Alba and The Honest Company, Inc.'s COO Christopher Gavigan appeared jointly in their capacities as Defendant's co-founders to petition federal officials to strengthen regulations against consumer products containing toxic chemicals, and Ms. Alba and Mr. Gavigan coordinated this appearance with Defendant's extensive marketing campaign, including as follows:

        a.    Ms. Alba appeared in the hallway of a Congressional office building, before a professional media crew, and stated:  "[A]s a business owner, I'm proof of concept that you can do business right—right by humans, right by the planet —and you can be very successful and grow very quickly."

        b.    Mr. Gavigan tweeted the following statement with a picture of the Washington Monument: "Here in D.C. to convince lawmakers to join @honest to protect citizens.  #chemical #reform."

38.    Defendant's representations that advertise the company as "honest" and "natural," extending to all of its product lines, are available to consumers via numerous online, offline, and point-of-sale platforms, extending to all or

substantially all potential and actual customers that fall within the class definitions set forth in this Complaint.

39. By advertising the company as "honest" and as "natural" Defendant has extended its overarching advertising claims to each individual product line, such that Defendant has cultivated an image in the minds of consumers that would lead a reasonable consumer to conclude that Defendant's product lines are all "natural."

40. Defendant has reinforced this brand impression by implying that Defendant's customers should not even read its labels to determine whether its products are indeed natural.

41. On May 29, 2014, Ms. Alba and Mr. Gavigan appeared jointly in an official company video to announce Honest would distribute their products through Target retail stores. Ms. Alba explained the reason she started the company as follows: "I wanted to create the safest and healthiest environment, but I didn't want to have to read every label on every single product all the time, it had to be easier." Mr. Gavigan added: "Mom and Dad cannot be the weekend toxicologists. We cannot put that work on them. So as a brand, we need to do that work. We need to create the standard." The video received more than



COMPLAINT

250,000 views on Target's official YouTube page. Target described the video as "co-founder Jessica Alba speaks honestly."

<u>*Defendant's Product Advertising*</u>

42.   Defendant sells the Natural Products to consumers at a ten to twenty percent premium, based on its advertising representations that they are "natural."

43.   Since at least September 20, 2012 and up to the filing of this lawsuit, Defendant has disseminated advertising statements to the public, rising to the level of a long-term advertising campaign that falsely claims the Natural Products are "natural."

44.   Defendant amplifies its representations that the Natural Products are "natural" with supplemental representations, including that the Natural Products are "all-natural," do not contain harsh chemicals, are safe, are non-toxic, and are plant-based.

*Honest Family Essentials Bundle*

45.   Starting as early as March 24, 2013, Defendant advertised a group of products it called the "Family Essentials" or "Essentials" bundle as "all-natural."



46.   Defendant advertised its company as providing "100% Natural Essentials"

COMPLAINT



47.  Defendant continues to advertise the "Essentials" bundle as "premium, natural & effective personal care & home cleaning essentials."

48.  The "Essentials" bundle has included the following Natural Products and advertised each of the Natural Products as "made with the highest quality all-natural & organic ingredients": Honest Hand Soap, Honest Dish Soap, Honest Auto Dish Detergent (Gel), Honest Dishwasher Packs, Honest Bubble Bath, Honest Multi-Surface Cleaner, and Honest Shampoo and Body Wash.

Conveniently shipped to your doorstep in our beautiful packaging, all these products are made with the highest quality all-natural & organic ingredients.



Customize your Bundle each Month!
*Every month you can choose any 5 products from our entire line that your family needs & wants most!*

Healing Balm

Sunscreen

Shampoo

Body Lotion

Bubble Bath

Body Oil

Conditioner

Hand Soap

Hand Sanitizer
( 8 oz )

Hand Sanitizer
( 2 oz x 2 )

Conditioning Mist

Bug Spray

Laundry Detergent

Surface Cleaner

Auto Dish Detergent

Dish Soap

Dishwasher Pods

Rinse Aid

Stain Remover

Oxy Boost

Dryer Cloths

Fruit + Veggie Wash

Wipes

49.    At various times throughout the Class Period, Defendant has grouped the "Essentials" products together in a single category as "premium natural, non-toxic personal care & home cleaning essentials" and described the same grouping as "bath/skin and household cleaning products for your entire family."

50.    Defendant has offered the "Essentials" bundle as a monthly subscription package for home delivery that customers customize with up to five products within Defendant's categorized offerings: the "Cleaning" category that includes Honest Laundry Detergent, Honest Auto Dishwasher Gel, Honest Dishwasher Packs, Honest Dishwasher Pods, and Honest Dish Soap; the "Bath & Body" category including Honest Hand Soap, Honest Bubble Bath, and Honest Shampoo & Body Wash, or the "Baby" category.



51.    Defendant has simultaneously offered all of the products included in the "Family Essentials" bundle for individual purchase online.

*Honest Hand Soap*

52.    Honest Hand Soap product packaging stated and continues to state

15

1   that the Honest Hand Soap is "natural."

2       53.    The following excerpted screenshot appeared on Honest.com on

3   August 14, 2015, displaying Honest Hand Soap product packaging:



13       54.    Honest.com described and continues to describe Honest Hand Soap

14   as "non-toxic," and containing "NO harsh chemicals (ever!)," and in so doing, has

15   amplified its representation that Honest Hand Soap is natural.

16       55.    The following excerpted screenshot appeared on Honest.com on

17   August 14, 2015, describing Honest Hand Soap as "Natural":



25       56.    On information and belief, these website statements, and all other

26   statements accessible on Defendant's Honest website in August of 2015 through

27

May of 2016 that are excerpted in this Complaint, were available online during the duration of the Class Period.

57. By consistently and systematically labeling and advertising Honest Hand Soap as (A) "natural" and (B) "honest" throughout the Class Period, Defendant intended that all consumers purchasing Honest Hand Soap would be exposed to these advertising claims and take them literally.

*Honest Dish Soap*

58. Honest Dish Soap's product webpage on Target.com states that the Honest Dish Soap is "Natural."

59. The product description on Target.com also described and continues to describe Honest Dish Soap as "non-toxic" and containing "no harsh chemicals (ever!)," and in so doing, has amplified Defendant's representation that Honest Dish Soap is natural.

60. The following excerpted screenshots appeared on Target.com on August 14, 2015, displaying Honest Dish Soap product packaging:

No harsh chemicals (ever!). Natural, non-toxic, biodegradable, pH balanced, ultra-concentrated, and Honestly Free of SLS, SLES, phthalates, synthetic fragrances, glycols, enzymes, dyes, phosphates, 1,4-dioxane, chlorine, DEA, formaldehyde, and caustics.

**Product Results:** Removes Residue, Removes Grease, Used for Cleaning, Cleaner

61. Target.com includes a disclaimer stating this description "comes from the product manufacturers."

 

62. Honest Dish Soap product packaging stated and continues to state "plant-based" and "non-toxic," and in so doing, has amplified its representation that Honest Dish Soap is natural.

63. The following excerpted screenshot appeared on Honest.com on August 14, 2015, displaying Honest Dish Soap product packaging:



64.     Honest Dish Soap's product webpage on Honest.com stated and continues to state that Honest Dish Soap has a "natural" formula; is "non-toxic"; and contains "no harsh chemicals (ever!)"; and in so doing, has further amplified its representation that Honest Dish Soap is natural.

65.     The following excerpted screenshot appeared on Honest.com on August 14, 2015, describing Honest Dish Soap:



66.     By consistently and systematically advertising the Honest Dish Soap as (A) "natural" and (B) "honest" throughout the Class Period, Defendant intended that all consumers purchasing Honest Dish Soap would be exposed to these advertising representations, and would take them literally.

*Honest Diapers*

67.     Honest.com states that Honest Diapers are "natural."

68.     The following excerpted screenshots appeared on Honest.com on August 26, 2015, in the "Diapering" section of the website:

COMPLAINT



69.     The Honest.com "Diapering" section provides the following website "meta-tag" description to search engine crawlers: "<meta content="Buy safe, natural baby products and eco-friendly disposable diapers. The Honest Company provides bath, skin care and green cleaning products." name="description" />.

70.     As a result of this meta-tag, the representation that Honest Diapers are "natural" appears verbatim in Google search results for Honest Diapering.

71.     The following excerpted screenshot is a Google search conducted for "Honest Diapering" on August 26, 2015:

COMPLAINT



72.   The Honest Diapers' product webpage on Honest.com states that

Honest Diapers are "plant-based" and "safe" and contain "NO HARSH

CHEMICALS (EVER)," and in so doing, has amplified its representation that

Honest Diapers are "natural."

73. The following excerpted screenshot appeared on Honest.com on August 25, 2015, describing Honest Diapers:



Our ultra absorbent, eco-friendly* diapers — made with naturally derived, plant-based & sustainable materials* — are extra soft, hypoallergenic, free of chlorine processing and additives (like fragrances, lotions, and latex). Oh, and did we mention how adorable they are?

about
- Plant-based (PLA) inner and outer layers — gentle on your baby's bottom
- Super absorbent core with fluff pulp harvested from certified sustainably managed forests – **NO chlorine processing or harsh chemical bleaches**
- Naturally derived odor inhibitors from citrus and chlorophyll
- Bio-based, gluten free wheat/corn blend in super absorbent core — less sodium polyacrylate
- Simply pure — **no fragrances, lotions, or latex**
- Yes, diapers can be fun too! Cute, stylish designs for girls and boys — **updated seasonally!** Never miss out.
- Comfy-stretch side panels and soft, refastenable tabs for perfect fit and wigglability!
- Securely fitting moisture barrier cuffs help prevent leakage and blowouts
- Gentle, safe, and non-irritating for sensitive skin

size & quantity chart



74. The Honest Diapers' product page on Honest.com previously stated that Honest Diapers were "100%....plant-based," and in so doing, further amplified its representations that Honest Diapers are natural.

75. The following excerpted screenshot appeared on the Internet Archive's Wayback Machine on August 26, 2015, accessed by inserting the Honest.com Diaper Bundle webpage, and selecting January 21, 2013:

*A new diaper for a new generation!*

100% non-toxic, chlorine-free, sustainable, and plant-based materials – ensuring your baby is safe and NOT exposed to any harsh or synthetic chemicals (ever!)

- Diapers
- Wipes
- Patterns
- Details & Ingredients

76.     By consistently and systematically advertising the Honest Diapers as (A) "natural" and (B) "honest" throughout the Class Period, Defendant intended that all consumers purchasing Honest Diapers would be exposed to these advertising representations and would take them literally.

*Honest Multi-Surface Cleaner*

77.     Honest.com states that Honest Multi-Surface Cleaner is "natural."

78.     The Honest Multi-Surface Cleaner's product webpage on Honest.com provides the following website "meta-tag" description to search engine crawlers: <meta content="Shop The Honest Company for natural all-purpose cleaner. With no harsh chemicals, our baby-safe, non-toxic multi-surface cleaner conquers dirt and grime." name="description" />.

79.     As a result of this meta-tag, the representation that Honest Multi-Surface Cleaner is "natural" appears verbatim in Google search results for Honest Multi-Surface Cleaner.

80.     The following excerpted screenshot is a Google search conducted for "Multi-Surface Cleaner – The Honest Company" on August 26, 2015:



COMPLAINT

81.     The Honest Multi-Surface Cleaner product webpage on Honest.com states that Honest Multi-Surface Cleaner is "naturally fresh," and "Non-Toxic," and that it contains "NO HARSH CHEMICALS (EVER)," and "Repels dust naturally." Each of these statements has amplified Defendant's representation that Honest Multi-Surface Cleaner is natural.

82.     The following excerpted screenshots appeared on Honest.com on August 25, 2015:



83.     By consistently and systematically advertising the Honest Multi-Surface Cleaner as (A) "natural" and (B) "honest" throughout the Class Period, Honest intended that all consumers purchasing Honest Multi-Surface Cleaner would be exposed to these advertising representations, and would take them literally.

*Honest Auto Dishwasher Gel*

84.     Honest.com described Honest Auto Dishwasher Gel as "100% Natural."

85.     In 2014, the following excerpted screenshot appeared on Honest.com, accessible via the Internet Archive Wayback Machine:



86. Honest.com stated that Honest Auto Dishwasher Gel is "naturally advanced."

87. The following excerpted screenshot appeared on the Internet Archive's Wayback Machine on May 9, 2016, accessed by inserting the Honest.com Honest Auto Dishwasher webpage, and selecting certain dates in 2013 and 2014:

about
- **Plant-based ingredients** beautifully clean all your plates, glassware, silverware, and bakeware
- **So naturally advanced & effective –** there is U.S. Patent in process on this formula
- **Contains NO bleach or bleaching agents** guaranteed not to etch metal / silver
- **Great** for pre-soaking baked on foods
- **Safely leave nothing behind** but clean
- **NO harsh chemicals (ever!)** or residues
- **100% Natural • Non-toxic • Biodegradable • pH Neutral**
- Septic tank & gray-water system safe

*Honest Dishwasher Packs*

88.     Honest Dishwasher Packs product packaging stated and continues to state the product consists of "naturally-derived ingredients."

89.     The following excerpted screenshot appeared on Honest.com on May 9, 2016, displaying the product packaging:



90.     Honest.com described and continues to describe Honest Dishwasher Packs as consisting of "Naturally-Derived Ingredients."

91.     The following excerpted screenshot appeared on Honest.com on May 9, 2016:

about

- **Dual-action** cleaning and degreasing power in a **concentrated, premeasured pack**
- **Unique plant and mineral-based** ingredients **brilliantly clean** your plates, glassware, cutlery, and bakeware
- Water-soluble, biodegradable pouch makes these premeasured packs super convenient, **without any mess or waste**
- Formulated for standard and European automatic dishwasher models
- Pure rinse formula- NO harsh chemical residues or worries!
- Non-toxic for you and your family
- **Naturally-Derived Ingredients • No Mess and No Waste • Septic Safe • Effective in All Temperatures**

92.     By consistently and systematically advertising the Honest Dishwasher Packs as (A) consisting of "naturally-derived ingredients" and (B) "honest" throughout the Class Period, Honest intended that all consumers purchasing Honest Dishwasher Packs would be exposed to these advertising representations, and would take them literally.

*Honest Shampoo And Body Wash*

93.     Honest Shampoo and Body Wash product packaging stated and continues to state that the Honest Shampoo and Body Wash is "natural."



COMPLAINT

94.     The following excerpted screenshot appeared on Honest.com on May 9, 2016, displaying Honest Shampoo and Body Wash product packaging:



95.     Honest.com described and continues to describe Honest Shampoo & Body Wash as consisting of "natural and organic ingredients," and in so doing, has amplified its representation that Honest Shampoo and Body Wash is natural.

96.     The following excerpted screenshot appeared on the Internet Archive's Wayback Machine on May 9, 2016, accessed by inserting the Honest.com Honest Auto Dishwasher webpage, and selecting September 9, 2015:

about

- **Natural and organic ingredients** gently cleanse, moisturize, and nourish your baby and family's entire body from head to toe
- **Jojoba and quinoa** proteins strengthen and fortify (with all 8 essential amino acids)
- **Organic coconut oil** moisturizes and protects
- **Chamomile, calendula, and aloe** gently soothe and nourish
- Fresh smelling sweet orange vanilla
- **Perfectly pH balanced** to remove dirt without stripping natural oils, and protect tender skin and delicate hair
- Gentle enough for babies with sensitive skin, eczema, or cradle cap
- Safe for Mom's color-treated hair
- **No harsh chemicals (ever!)** - honestly clean and extremely satisfying
- **Hypoallergenic • Tear-Free • Color-Safe • Vegan • Biodegradable • pH Balanced • Naturally Non-Toxic**

97.     By consistently and systematically advertising the Honest Shampoo and Body Wash as (A) "natural" and (B) "honest" throughout the Class Period,

Honest intended that all consumers purchasing Honest Dishwasher Packs would be exposed to these advertising representations, and would take them literally.

*Honest Conditioning Detangler*

98.     Honest Conditioning Detangler's product packaging stated and continues to state that the Honest Conditioning Detangler is "natural."

99.     Defendant displays the product packaging on Honest.com.  The following excerpted screenshot appeared on the Internet Archive's Wayback Machine on May 9, 2016, accessed by inserting the Honest.com Honest Conditioning Detangler webpage, and selecting March 15, 2015:



COMPLAINT

100.   By consistently and systematically advertising the Honest Conditioning Detangler as (A) "natural" and (B) "honest" throughout the Class Period, Honest intended that all consumers purchasing Honest Conditioning Detangler would be exposed to these advertising representations, and would take them literally.

*Honest Bubble Bath*

101.   Honest Bubble Bath's product packaging stated and continues to state that the Honest Bubble Bath is "natural."

102.   The following excerpted screenshot appeared on Honest.com on May 9, 2016, displaying Honest Bubble Bath product packaging.

bubble bath - perfectly gentle

infused with sweet smelling orange and vanilla, our super foaming bubbles leave skin feeling supremely soft &



103.   By consistently and systematically advertising the Honest Bubble Bath  (A) "natural" and (B) "honest" throughout the Class Period, Honest

intended that all consumers purchasing Honest Bubble Bath would be exposed to these advertising representations, and would take them literally.

<p align="center">**<u>Untrue, Misleading, and/or Deceptive Claims</u>**</p>

<p align="center">*<u>Natural Goods Advertising</u>*</p>

104.  Defendant's representations in advertisements and labels are misleading, deceptive, and/or untrue.

105.  Defendant falsely represented and continues to represent, expressly and by implication, that the Natural Products are natural.

106.  "Natural" in the context of Defendant's products means each product contains no artificial ingredients.

107.  The representation that a product is natural is material to a reasonable consumer.

<p align="center">*Synthetic Ingredients Are Not Natural*</p>

108.  Honest Natural Products that Defendant advertised and/or labeled as "natural" contain non-natural ingredients.

109.  Contrary to Defendant's representations in advertisements and labels, including in product descriptions on Honest.com and Target.com, the Honest Natural Products contain non-natural ingredients as follows:

    a.    Honest Dish Soap

        *i.*    *Methylisothiazolinone*- a synthetic preservative.

        *ii.*    *Cocamidopropyl Betaine*- a synthetic surfactant.

        *iii.*    *Phenoxyethanol*- a synthetic preservative.

    b.    Honest Hand Soap

        *i.*    *Phenoxyethanol*- see above.

    c.    Honest Multi-Surface Cleaner

        *i.*    *Methylisothiazolinone*- see above.

    d.    Honest Diapers

<p align="center">31</p>

<p align="center">COMPLAINT</p>

1     i.     *Sodium Polycrylate*- a petrochemical-based additive.

2          e.     Honest Auto Dishwasher Gel

3               i.     *Potassium Sorbate* – a synthetic preservative.

4          f.     Honest Dishwasher Packs

5               i.     *Polyvinyl Alcohol* – a synthetic polymer.

6          g.     Honest Conditioning Detangler

7               i.     *Caprylyl Glycol* – a synthetic agent.

8          h.     Honest Shampoo & Body Wash

9               i.     *Caprylyl Glycol* – see above.

10               ii.     *Cocamidopropyl Hydroxysultaine* – a synthetic

11                    surfactant.

12          i.     Honest Bubble Bath

13               i.     *Caprylyl Glycol* – see above.

14     110.   Synthetic ingredients are artificial, not natural.

15     111.   The Environmental Working Group rates many of these ingredients

16 as exceeding the organization's "low hazard" threshold, according to the

17 following ratings on the organization's informational website:

18          (a)     Methylisothiazolinone - EWG Rating: 7 out of 9 – "High

19                    Hazard."

20          (b)     Cocamidopropyl Betaine - EWG Rating: 4 out of 9 –

21                    "Moderate Hazard."

22          (c)     Phenoxyethanol - EWG Rating: 4 out of 9 – "Moderate

23                    Hazard."

24          (d)     Sodium Polycrylate - EWG Rating: 3 out of 9 – "Moderate

25                    Hazard."

26     112.   Defendant's own statements on the "honestly blog" concede that

27 these ingredients are not natural.

113.    Defendant has expressly criticized its competitors for using "preservatives (and ingredients) with synthetic fragrances," including "Methylisothiazolinone."

114.    Defendant stated on the "honestly blog" that Cocamidopropyl Betaine "isn't found in nature," adding the statement "but that's the beauty and power of chemistry!"

115.    Defendant stated on the "honestly blog" that the ingredient Phenoxyethanol is "synthetically produced in a laboratory."

116.    Defendant indicated on the "honestly blog" that the ingredient Sodium Polycrylate is "petroleum-based."  This statement also contradicts Defendant's prior advertising representation that Honest Diapers are 100% plant-based.

117.    Defendant stated on the "honestly blog" that Potassium Sorbate is "synthetically produced."

118.    Defendant stated on the "honestly blog" that Polyvinyl Alcohol is a "synthetic polymer."

119.    Defendant explicitly and impliedly conceded on the "honestly blog" that Caprylyl Glycol is "synthetically made."

120.    Defendant stated on the "honestly blog" that Cocamidopropyl Hydroxysultaine is a "surfactant."

121.    As indicated by the statements above, Defendant knowingly advertises and/or labels the Natural Products as natural despite knowing the Natural Products contain synthetic, non-natural ingredients.

122.    Plaintiffs would all consider purchasing Honest Natural Products in the future if Defendant ceases selling misrepresented products as alleged in this Complaint.

123. By claiming Natural Products that contain synthetic ingredients are natural, Defendant knowingly deceived and misled reasonable consumers and knowingly made representations in advertising and/or labels Defendant knew to be untrue and would mislead consumers, or which by the exercise of reasonable care Defendant should have known were untrue and would mislead consumers.

**Plaintiffs' Experience with Defendants' Advertising and Products**

*Plaintiffs' Purchase of the Products*

*Family Essentials Bundle*

124. Plaintiff Julie Hedges purchased a subscription to the "Family Essentials" bundle through Honest.com on or around July 13, 2013. Hedges selected five products from the website's product viewer and purchased a home delivery subscription. Under the terms of the subscription package, known in e-commerce as a "negative option," Hedges was required to opt-out of the subscription to terminate her monthly purchase of the same products. Hedges did not opt-out of the subscription for several months.

*Hand Soap*

125. Plaintiff Hedges purchased Honest Hand Soap from Honest.com on July 13, 2013.

*Dish Soap*

126. Plaintiff Hedges purchased Honest Dish Soap from Honest.com on July 13, 2013.

*Diapers*

127. Plaintiff Hiddlestone purchased Honest Diapers from Honest.com on numerous occasions including on December 1, 2014.

*Multi-Surface Cleaner*

128. Plaintiff Hedges purchased Honest Multi-Surface Cleaner from Honest.com on July 13, 2013.

COMPLAINT

1

*Auto Dishwasher Gel*

2   129.   Plaintiff Hedges purchased Honest Auto Dishwasher Gel from

3   Honest.com on July 13, 2013.

4

*Dishwasher Packs*

5   130.   Plaintiff Hiddlestone purchased Honest Dishwasher Packs from

6   Honest.com on December 1, 2014.

7

*Conditioning Detangler*

8   131.   Plaintiff Hiddlestone purchased Honest Conditioning Detangler from

9   Honest.com on May 1, 2015.

10

*Shampoo & Body Wash*

11   132.   Plaintiff Hiddlestone purchased Honest Shampoo & Body Wash

12   from Honest.com on May 1, 2015.

13

*Bubble Bath*

14   133.   Plaintiff Hedges purchased Honest Bubble Bath from Honest.com on

15   July 13, 2013.

16   *<u>Plaintiffs' Exposure to the False Advertising and the Resulting Harm</u>*

17   134.   Plaintiffs Julie Hedges and Candace Hiddlestone actually witnessed

18   Defendant's advertising campaign.

19   135.   Hedges read and generally believed that Honest products were

20   natural, non-toxic, and plant-based.  Hedges saw Defendant's advertising and

21   labeling representations on product packaging, Facebook publications, internet

22   advertising, television advertising and individual product pages.

23   136.   When Hedges purchased the Family Essentials Bundle online, she

24   saw and relied upon Defendant's representation that the products were "natural."

25   137.   Hedges specifically understood that the Honest products were more

26   expensive than non-natural products on the basis that they were natural, and she

27   reasonably relied on Defendant's "natural" advertising when she purchased the

35

COMPLAINT

products marked up at a premium as compared to comparable products, based on Defendant's representations on its labels, advertising and marketing that the products were natural.

138. Hedges confirmed that the product labels contained representations that the products were "natural" when she received them in the mail, and did not cancel the subscription to receive future packages and be charged for the Honest natural products on that basis, for a duration of six months.

139. At some point in time after Hedges purchased the Family Essentials bundle, Defendant announced that the same products would be available at Target outlets. At that point, Hedges began to purchase the same products at her local Target outlet store in Georgia.

140. Plaintiff Candace Hiddlestone specifically understood that the Honest products were more expensive than non-natural products on the basis that they were natural, and she reasonably relied on Defendant's "natural" advertising when she purchased the products marked up at a premium as compared to comparable products, based on Defendant's representations on its labels, advertising and marketing that the products were natural.

141. Hiddlestone accessed the Honest products and witnessed Defendant's false advertising campaign through Defendant's official mobile application device application. Hiddlestone read Defendant's mission statement, Frequently Asked Questions, and guarantees.

142. Hiddlestone followed the company on Facebook and continued receiving "promoted" social media posts and social media advertising after she stopped following the company.

143. Hiddlestone read and relied upon Defendant's product representations, both on product labels and in Defendant's advertising, which representations were material to her purchasing decisions.

144.   As stated above, Defendant knew or should have known that its representations regarding the Natural Products would mislead consumers into believing those products did not contain synthetic ingredients.

145.   Plaintiffs Hedges and Hiddlestone did not know and had no reason to suspect that Defendant misrepresented the characteristics of the Honest Natural Products.

146.   As a result of their payment of a premium to Defendant for these Natural Products, both Hedges and Hiddlestone experienced economic harm.

### Plaintiffs' Reliance Was Reasonable

147.   Plaintiffs reasonably relied on Defendant's own statements and advertising concerning the particular qualities and benefits of their products.

148.   Plaintiffs read and relied upon the labels on products in making their purchasing decisions, along with viewing the statements and advertising on Defendant's website and elsewhere on the internet.

149.   A reasonable consumer would consider the ingredients and physical properties when looking to purchase a natural product. Here, Plaintiffs relied on the specific statements and representations by Defendant that the Natural Products were natural and supplemental representations, including that the Natural Products do not contain harsh chemicals, are safe, are non-toxic, and are plant-based.

### Defendant's Knowledge and Notice of its Breaches of its Express and Implied Warranties

150.   Defendant had sufficient notice of its breaches of its express and implied warranties.  Defendant had and has exclusive knowledge of the physical and chemical make-up of the Honest Natural Products.

1    151.   For instance, as early as June 28, 2012, a consumer inquired with

2  Defendant about its inadequate disclosure that its cleaning products contained

3  cocamidopropyl betaine, phenoxyethanol, and methylisothiazolinone[1]:

**katie says**
Wednesday, June 27th, 2012 1:27 PM at 1:27 pm

Where does it say that the dish soap contains the ingredients: cocamidopropyl betaine, phenoxyethanol, and methylisothiazolinone. On the bottle it says water and coconut oil derived surfactants. Are all those things what makes coconut oil derived surcactants?

Update before I even send. I just need to say, I am surprised that the label of a company who's goal is to be completely transparent, was not so transparent. I went to the website and now the dish soap has an 'updated scent' of white grapefruit and spells out those ingredients you mentioned instead of what's on my bottle, "Water, and coconut oil derived surfactants.". I am disappointed in the 'honest' company and will not be purchasing from them again.

Reply

**Maia says**
Thursday, June 28th, 2012 6:25 PM at 6:25 pm

Hi Katie-
I got my information from the website and a couple of phone calls to the company; I've not yet held a bottle of the soap in my hand, and I'm disappointed to hear that the ingredients listed there are vague and, frankly, sneaky. I agree that there is an inconsistency between the ostensible mission of the company and not only the inclusion of such chemicals, but also the intentional obscuring of their inclusion! That said, I have to reiterate what I said in my post: I think Jessica Alba is sincerely passionate about making safe products, and the vast majority of the Honest line is clean, safe, and...well, honest. It's unfortunate that the dish soap is such a glaring exception.

20    152.   Plaintiffs Hiddlestone and Hedges also timely sent Defendant a letter

21  detailing the bases for their claims of breach of implied and express warranties.

22  This letter was sent 30 days prior to the filing of this complaint.

[1] https://gimmethegoodstuff.org/the-honest-company-by-jessica-alba-good-bad-or-sneaky/#comments

COMPLAINT

**Privity Exists With Plaintiffs and the Proposed Class**

153.  Defendant knew that consumers such as Plaintiffs and the proposed Class would be the ultimate user of the products and target of its advertising and statements.

154.  Defendant intended that its statements and representations would be considered by the end-users of its products, including Plaintiffs and the proposed Class.

155.  Defendant directly marketed to Plaintiffs through its statements on its websites and packaging.

156.   Plaintiffs are the intended beneficiaries of the express and implied warranties.

**CLASS ACTION ALLEGATIONS**

157.  Plaintiffs bring this action on behalf of themselves and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a nationwide class (the "Honest Natural Products Class") that include other similarly situated purchasers of the Honest Products who experienced the same or substantially similar harm as a result of Defendant's false advertising.

**HONEST NATURAL PRODUCTS CLASS:** All U.S. residents who have purchased Honest Dish Soap, Honest Hand Soap, Honest Diapers, Honest Multi-Surface Cleaner, Honest Dishwasher Packs, Honest Dishwasher Gel, Honest Shampoo and Body Wash, Honest Detangling Conditioner, and/or Honest Bubble Bath (the "Natural Product(s)") during the applicable statute of limitations.

The Class excludes any judge or magistrate assigned to this case; all persons who make a timely election to be excluded from the Class; governmental entities; Defendant and any entity in which Defendant has a controlling interest,

and its officers, directors, legal representatives, successors and assigns; and any person who purchased the Honest Products for resale.

158. As used herein, the terms "Natural Products Class Members" shall mean and refer to the members of that Class described above.

159. Plaintiffs reserve the right to modify the Class definitions, and to add subclasses, as warranted by facts discovered.

160. Class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

161. Numerosity—Federal Rule of Civil Procedure 23(a)(1). The members of the Class are so numerous that joinder is impracticable. Upon information and belief, there are at least thousands of individual purchasers of Honest Natural Products. The precise number of Honest Natural Products Class Members is unknown to Plaintiffs, but may be ascertained, including by objective criteria. Members of the class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods.

162. Commonality and Predominance—Federal Rules of Civil Procedure 23(a)(2) & 23(b)(3). This action involves common questions of law or fact, which predominate over any questions affecting individual members of the Class. Common questions include:

(a) Whether Defendant owed a duty of care to the Honest Natural Products Class.

(b) Whether Defendant represented and continues to represent that certain Honest Natural Products are natural;

(c) Whether Defendant's representations in advertising and/or labeling are false, deceptive, and misleading;

(d)     Whether those representations are likely to deceive a reasonable consumer;

(e)     Whether Defendant had knowledge that those representations were false, deceptive, and misleading;

(f)     Whether Defendant continues to disseminate those representations despite knowledge that the representations are false, deceptive, and misleading;

(g)     Whether a representation that a product is natural is material to a reasonable consumer of natural products;

(h)     Whether California law applies to the claims of the proposed Class;

(i)     Whether Defendant breached express and implied warranties;

(j)     Whether Defendant violated California Business and Professions Code § 17200 *et seq.*;

(k)     Whether Defendant violated California Business and Professions Code § 17500 *et seq.*;

(l)     Whether Defendant violated California Civil Code § 1750 *et seq.*;

(m)     Whether Defendant was unjustly enriched;

(n)     Whether Plaintiffs and the members of the Class are entitled to actual, statutory, and punitive damages; and

(l)     Whether Plaintiffs and members of the Class are entitled to declaratory and injunctive relief.

163.    Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs each individually and on behalf of the other members of the Class.  Identical statutory violations and business practices and harms are involved.  Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

164.    Typicality—Federal Rule of Civil Procedure 23(a)(3). Plaintiffs' claims are typical of the claims of the other members of the Class because, among

other things, all members of the Class were comparably injured through the uniform misconduct described above and were subject to Defendant's false, deceptive, misleading, and unfair labeling and marketing practices, including the false claims that the Honest Natural Products are natural. Plaintiffs do not have any interests adverse to the Class.

165. Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4). Plaintiffs are adequate representatives of the members of the Class because their interests do not conflict with the interests of the other members of the Class; they have retained competent counsel with experience in complex class action litigation; and Plaintiffs will prosecute this action vigorously. The interests of the members of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

166. Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2). Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Class, each as a respective whole.

167. Superiority—Federal Rule of Civil Procedure 23(b)(3). A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Class to seek redress for Defendant's wrongful conduct on an individual basis. Individualized litigation would also pose the threat of significant administrative burden to the court system. Individual cases would

create the potential for inconsistent or contradictory judgments, and would increase delay and expense to all parties and the court system. By contrast the class action device presents far fewer management difficulties and provides the streamlined benefits of singular adjudication and comprehensive supervision by one court. Given the similar nature of the class members' claims, the Class will be easily managed by the Court and the parties and will be managed more efficiently in this integrated class action than through multiple separate actions in the various states.

<div align="center">

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

**Violation of California's Consumer Legal Remedies Act**

**California Civil Code §§ 1750 *et seq.***

</div>

168. Plaintiffs hereby incorporate by reference the allegations contained in this Complaint.

169. Plaintiffs bring this claim for relief pursuant to the California Consumers Legal Remedies Act ("CLRA").

170. Defendant's conduct violated the CLRA, Civil Code § 1770(a)(5), which prohibits "Representing that goods or services have . . . characteristics, ingredients, uses, benefits, or quantities which they do not have."

171. Defendant's conduct violated the CLRA, Civil Code § 1770(a)(7), which prohibits "Representing that goods or services are of a particular standard, quality or grade . . . if they are of another."

172. Defendant's conduct violated the CLRA, Civil Code § 1770(a)(9), which prohibits "Advertising goods . . . with intent not to sell them as advertised."

173.    Defendant's conduct violated the CLRA, Civil Code § 1770(a)(16), which prohibits "Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not."

174.    Honest Products are "goods" within the meaning of Civil Code § 1761(a) and § 1770.

175.    Defendant is a "person," as defined by Civil Code § 1761(c).

176.    Plaintiffs and the members of the Class are "consumers" within the meaning of Civil Code § 1761(d) and § 1770.

177.    Plaintiffs Hiddlestone and Hedges, and members of the Class purchased Honest Dish Soap, Honest Hand Soap, Honest Diapers, Honest Multi-Surface Cleaner, Honest Dishwasher Packs, Honest Dishwasher Gel, Honest Shampoo and Body Wash, Honest Detangling Conditioner, and/or Honest Bubble Bath for personal, family, and household purposes as meant by Civil Code § 1761(d).

178.    Each purchase of the Honest Products by Plaintiffs and each member of the Class constitutes a "transaction" within the meaning of Civil Code §§ 1761(e) and 1770.

179.    In fact, Plaintiffs Hiddlestone and Hedges and the Honest Natural Products Class Members relied upon the representations in advertising and labels to their detriment and paid a higher price for Honest Natural Products than they would have paid for products that are not natural.

180.    Defendant's conduct is ongoing and, unless restrained, likely to recur.

181.    Plaintiffs, on behalf of themselves and members of the Class, seek injunctive relief prohibiting Defendant from engaging in the misconduct described herein.

182.    Plaintiffs seek attorneys' fees and costs as allowed by law.

183. CLRA Civil Code § 1782(d) codifies Plaintiffs' right to amend without leave of court to include a request for damages.

184. On April 27, 2016, Plaintiffs Hiddlestone and Hedges sent a CLRA § 1782 (a) notice letter to Defendant, a copy of which is attached hereto as Exhibit A. Defendant has failed to provide appropriate relief for its violations of CLRA §§ 1770(a)(5), (7), (9) and (16) within 30 days of this notification. In accordance with Civ. Code 1782(b), Plaintiffs and the Class are entitled, under Civ. Code § 1780, to recover and obtain the following relief for Defendant's violations of CLRA §§ 1770(a)(5),(7), (9) and (16):

    (a)     actual damages under CLRA § 1780(a)(1);

    (b)     restitution of property under CLRA § 1780(a)(3);

    (c)     punitive damages under CLRA § 1780(a)(4) and because Defendant has engaged in fraud, malice or oppression;

    (d)     attorneys' fees and costs under CLRA § 1780(d); and

    (e)     any other relief the Court deems proper under CLRA 1780(a)(5).

185. Attached as Exhibit B, Plaintiff Hiddlestone states facts showing that this action was filed in a court described as a proper place for the trial of the action.

<div align="center">

**<u>SECOND CLAIM FOR RELIEF</u>**

**For Violation of California's False Advertising Law,**

**California Business & Professions Code §§ 17500 *et seq.***

</div>

186. Plaintiffs hereby incorporate by reference the allegations contained in this Complaint.

187. California's False Advertising Law, Business & Professions Code §§ 17500 et seq. ("FAL"), provides that "[i]t is unlawful for any . . . corporation . . . with intent . . . to dispose of . . . personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or

<div align="center">45</div>
<div align="center">COMPLAINT</div>

disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."

188. Defendant's acts and practices as described herein have deceived and/or are likely to deceive Plaintiffs and the Honest Natural Products Class Members.

189. By its actions, Defendant has been and is disseminating uniform marketing statements concerning the Honest Products, and the performance, facts connected with, and disposition of Honest Products, which by their nature are untrue or misleading, and which Defendant knew or should have known were untrue and/or misleading, within the meaning of California Business & Professions Code §§ 17500 et seq.

190. Defendant used numerous advertising devices and other manner and means to disseminate these statements, including those set forth more fully elsewhere in this Complaint.

191. The statements are likely to deceive and continue to deceive the consuming public for the reasons detailed above.

192. Defendant intended, and continues to intend, that Plaintiffs and the members of the Class rely upon the untrue and/or leading statements set forth more fully elsewhere in this Complaint.

193. In fact, Plaintiffs and the members of the Class relied upon Defendant's statements to their detriment.

194. The above described untrue and misleading marketing representations Honest disseminated continue to have a likelihood to deceive Plaintiffs and members of the Class.

195. Plaintiffs and the members of the Class have experienced an economic injury as a result of Defendant's untrue and/or misleading statements.

196. Plaintiffs Hiddlestone and Hedges and the members of the Honest Natural Products Class purchased Honest Natural Products and paid a premium for them based on Defendant's untrue and/or misleading statements.

197. Plaintiffs on behalf of all members of the Class seek equitable relief requiring Defendants to refund and restore to Plaintiffs and all members of the Class the premiums they paid for Honest Natural Products in an amount to be determined by this Court but at least $5,000,000, and injunctive relief prohibiting Defendants from engaging in the misconduct described herein.

### THIRD CLAIM FOR RELIEF

### For Violation of California's Unfair Competition Law

### California Business and Professions Code §§ 17200, *et seq.*

198. Plaintiffs hereby incorporate by reference the allegations contained in this Complaint.

199. Plaintiffs assert this claim on behalf of themselves and the members of the Class against Defendant.

200. Defendant's misconduct violated the Unfair Competition Law, Business and Professions Code §§ 17200 et seq. ("UCL").

201. Defendant's misconduct is unlawful under the UCL, as it violates:

(a) California's FAL, California Business & Professions Code §§ 17500 *et seq.*, as set forth more fully above, *supra*.

(b) California's CLRA, California Civil Code §§ 1750 *et seq*., as set forth more fully above, *supra*.

(c)     Section 5(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce; and

(d)     Section 12 of the FTC Act, 15 U.S.C. § 52, which prohibits the dissemination of any false advertisement in or affecting commerce for the purpose of inducing, or which is likely to induce, the purchase of food, drugs, devices, services, or cosmetics.

(e)     Plaintiffs reserve the right to identify additional provisions of law violated by Defendant as further investigation and discovery are undertaken and additional facts are discovered.

202.     Defendant's misrepresentations and its false and misleading advertising constitute "unfair" business acts and practices under the UCL.

203.     Defendant's misconduct offends established public policy and is unethical, and/or substantially injurious to Plaintiffs and the members of the Class.

204.     Defendant's misconduct undermines and violates the policies codified in the FAL and the CLRA.

205.     There is no legitimate utility of Defendant's misconduct, let alone any that would outweigh the harm to Plaintiffs and the members of the Class.

206.     Plaintiffs and the members of the Class could not have reasonably avoided the injury each of them suffered, as reasonable consumers had no way of reasonably ascertaining the Honest Products are misbranded and are not properly labeled or advertised, and were at all relevant times dissuaded from avoiding any injury by Defendant's long term advertising campaign.

207.     Defendant's misrepresentations and its false and misleading advertising regarding Honest Products constitute "fraudulent" business acts and

COMPLAINT

practices because members of the consuming public, including Plaintiffs and the members of the Class, were and are likely to be deceived thereby.

208. In fact, Plaintiffs Hiddlestone and Hedges and the Honest Natural Products Class Members relied upon Defendant's representations on labels and in advertisements to their detriment and paid a higher price for Honest Natural Products than they would have paid for products that are not natural.

209. Defendant's conduct is ongoing and unless restrained, likely to recur.

210. Plaintiffs and each Class Member has been injured in fact, and has lost money or property, and each is entitled to restitution and injunctive relief.

211. Defendant should be required to pay damages and/or make restitution to Plaintiffs and the members of the Class and pay for Plaintiffs' in an amount to be determined by this Court but at least $5,000,000 in the aggregate, as well as Plaintiffs' and the Class members' attorneys' fees.

<u>**FOURTH CLAIM FOR RELIEF**</u>

**BREACH OF EXPRESS WARRANTY**

212. Plaintiffs hereby incorporate by reference the allegations contained in this Complaint.

213. As set forth hereinabove, Defendant made representations to Plaintiffs and members of the Class that, among other things, Honest Natural Products are "natural."

214. The representations set forth herein as to the Natural Products constitute express warranties.

215. These promises became part of the basis of the bargain between the parties and thus constituted express warranties.

216. Plaintiffs and the Class Members reasonably relied on these promises.

217. On the basis of these express warranties, Defendant sold and Plaintiffs and the Honest Natural Products Class Members purchased the Honest Natural Products.

218. The Honest Natural Products contained unnatural ingredients and therefore Defendant breached its express warranties. As a result, Plaintiffs and the Honest Natural Products Class Members did not receive goods as warranted by Defendant.

219. Privity exists because Defendant expressly warranted to Plaintiffs and the Honest Natural Products Class Members that the Honest Natural Products did not contain natural products, including on the labeling of Honest Hand Soap, which labeling was reviewed and relied upon by Plaintiffs and the Honest Natural Products Class Members.

220. As a proximate result of Defendant's breaches of warranty, Plaintiffs and members of the Class have been damaged in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF

### Quasi-Contract (Money Had and Received)

221. Plaintiffs hereby incorporate by reference the allegations contained in this Complaint.

222. Defendant unjustly retained a benefit at the expense of Plaintiffs and the members of the Class in the form of substantial revenues and payments from Plaintiffs and the members of the Class for the Honest Products and from Defendant's conduct in misrepresenting the Honest Products in labels and advertisements.

223. Based on the mistake, Plaintiffs and the members of the Class paid for the Honest Products.

224. It would be unjust and inequitable for Defendant to retain the benefits it received and continues to receive from Plaintiffs Hiddlestone and Hedges and the Honest Natural Products Class Members for the premiums they paid in exchange for products Defendant falsely represented as "natural," absent full repayment to Plaintiffs Hiddlestone and Hedges and the Honest Natural Products Class Members who purchased the Honest Natural Products.

225. Plaintiffs seek restitution on all of the inequitable payments and profits Defendant retained from Plaintiffs and the members of the Class in an amount to be determined by this Court but at least $5,000,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, pray for:

A. An order certifying the Class and appointing Plaintiffs as the representatives of the Class, and appointing counsel of record for Plaintiffs as counsel for the Class;

B. Declaratory and injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices described herein, and directing Defendant to identify, with Court supervision, victims of the misconduct and pay them restitution and disgorgement of all profits and unjust enrichment Defendant acquired by means of any business practice declared by this Court to be unlawful, unfair, and fraudulent;

C. An Order for Defendant to engage in a corrective advertising campaign;

D. Actual damages, including under CLRA § 1780(a)(1), in an amount to be determined by this Court but at least $5,000,000;

E. Restitution, disgorgement, and/or constructive trust on all of the inequitable payments and profits Defendant retained from Plaintiffs and the

members of the Class, including under CLRA § 1780(a)(2), in an amount to be determined by this Court but at least $5,000,000;

F.　Punitive damages under CLRA § 1780(a)(4) and because Defendant has engaged in fraud, malice or oppression;

G.　Attorneys' fees, per Cal. Civil Code 1780(d) and California Code of Civil Procedure § 1201.5;

H.　Expenses and costs of this action;

I.　Pre-judgment and post-judgment interest; and

J.　Such other and further relief as the Court may deem just and proper, including under CLRA § 1780(a)(5).

Dated:　September 19, 2016

By /s/ Nicholas A. Carlin
　　Nicholas A. Carlin
　　Brian S. Conlon
　　Phillips, Erlewine, Given & Carlin LLP
　　39 Mesa Street, Suite 201-The Presidio
　　San Francisco, CA  94129
　　Telephone:  415-398-0900
　　Email:  nac@phillaw.com
　　　　　　bsc@phillaw.com

/s/ *Leonard B. Simon*
The Law Offics of Leonard B. Simon
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619-338-4549
Email:  lsimon@rgrdlaw.com

/s/ *Rebecca A. Peterson*
Rebecca A. Peterson
Robert K. Shelquist
Lockridge, Grindal, Nauen P.L.L.P.
100 Washington Avenue South,
Suite 2200
Minneapolis, MN  55401
Telephone:  312-339-6900
Email:  rapeterson@locklaw.com
　　　　rkshelquist@locklaw.com

/s/ *Jon W. Borderud*
Jon W. Borderud
Law Offices of Jon W. Borderud
2028 Cliff Drive
Santa Barbara, CA  93109
Telephone:  310-621-7004
Email:  borderudlaw@cox.net

/s/ *Charles J. LaDuca*
Charles J. LaDuca
Cuneo Gilbert & LaDuca, LLP
8120 Woodmont Avenue, Suite 810
Bethesda, MD 20814
Phone: (202) 789-3960
Fax: (202) 789-1813
charles@cuneolaw.com

/s/ *Michael J. Flannery*
Michael J. Flannery
Cuneo Gilbert & LaDuca, LLP
7733 Forsyth Boulevard, Suite 1675
St. Louis, MO 63105
Telephone: 314.226.1015
Facsimile: 202.789.1813
mflannery@cuneolaw.com

/s/ *J. Barton Goplerud*
J. Barton Goplerud
Brian O. Marty
Hudson Mallaney Shindler &Anderson
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Telephone: 515.223.4567
Facsimile: 515.223.8887
jbgoplerud@hudsonlaw.net
bomarty@hudsonlaw.net

Attorneys for Plaintiffs Candace
Hiddlestone and Julie Hedges

**JURY DEMAND**

Plaintiffs hereby demand a jury trial on all issues so triable.

Dated: September 19, 2016

By: */s/ Nicholas A. Carlin*
Nicholas A. Carlin

**ATTESTATION**

I, Nicholas A. Carlin, am the ECF user whose identification and password is being used to file the instant document. I hereby attest that all counsel whose electronic signatures appear above provided their authority and concurrence to file this document.

/s/ Nicholas A. Carlin
Nicholas A. Carlin


EXHIBIT A



Phillips, Erlewine, Given & Carlin LLP

April 27, 2016

39 Mesa Street
Suite 201
The Presidio
San Francisco
California
94129

Tel: 415.398.0900
Fax: 415.398.0911
www.phillaw.com

**BY CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Brian Lee, CEO
The Honest Company, Inc.
2700 Pennsylvania Ave., Ste. 1200
Santa Monica, CA 90404

Craig Gatarz
Registered Agent
The Honest Company, Inc.
2700 Pennsylvania Ave., Ste. 1200
Santa Monica, CA 90404

**Re: Violation of Express and Implied Warranties and the California Consumer Legal Remedies Act.**

Dear Sirs:

We represent Candace Hiddlestone, Julie Hedges, and Elan Schieffelin: purchasers of The Honest Company's products, including: Honest Sunscreen, Honest Diapers, Honest Hand Soap, Honest Dish Soap, Honest Auto Dishwasher Gel, Honest Dishwasher Packs, Honest Conditioning Detangler, Honest Multi-Surface Cleaner, Honest Shampoo & Body Wash, and Honest Bubble Bath. Ms. Hiddlestone, Ms. Hedges, and Ms. Schieffelin purchased these products from September of 2012 through August of 2015.

This letter constitutes notice that The Honest Company ("Honest") is in violation of California's false advertising laws and has breached numerous warranties made on its product labeling and publicized through its website Honest.com and other advertising. Please be advised that Honest's misconduct violates the California Consumer Legal Remedies Act ("CLRA") and likewise breaches express and implied product warranties.

During that period, Honest falsely represented that the naturally advertised products were "natural," "all-natural," "100% natural," "naturally derived," and/or work "naturally." Honest also advertised the Honest Sunscreen as "effective," "super effective," "highly effective," and "safe," and represented that the product provides "broad-spectrum mineral-based protection" or "natural mineral based sun protection." Each of Honest's representations constituted an express warranty about the nature and ingredients of the products our clients purchased, and each representation gave rise to causes of action under the CLRA and for breach of express and implied warranties.

Honest's material misrepresentations and failures to disclose violate the CLRA, as follows:

1. Honest has misrepresented Honest Sunscreen, Honest Diapers, Honest Hand Soap, Honest Dish Soap, Honest Auto Dishwasher Gel, Honest Dishwasher Packs, Honest Conditioning Detangler, Honest Multi-Surface Cleaner, Honest Shampoo & Body Wash, and Honest Bubble Bath as having characteristics, ingredients, uses, and benefits that they do not have (Cal. Civ. Code §1770(a)(5));

2. Honest has misrepresented these same products as fulfilling a particular standard, quality, or grade, when they are of another (Cal. Civ. Code § 1770(a)(7));

3. Honest advertised these products with the intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9)); and

4. Honest represented the products were supplied in commercial transactions in accordance with previous representations, when in fact these products did not accord with Honest's representations. (Cal. Civ. Code §1770(a)(16)).

In many cases, Honest's advertising has changed over time, including as noted on March 8, 2016 in a Wall Street Journal investigative report that suggests Honest's supply chain is not reliably policed and audited to ensure Honest's product offerings comply with its product advertising. Almost without exception, Honest continues to label and advertise its naturally advertised products as "natural," or states that they work "naturally," when Honest knows the products contain synthetic ingredients.

Honest's false representations about the "natural" or "all-natural" ingredients in its products include, without limitation, the following:

### Honest Diapers

Honest advertised the Honest Diapers as "natural" in the Diapering section of its website. Honest.com's product page for the diapers also stated they are "naturally derived." Contrary to Honest's representations in product descriptions on Honest.com, Honest's Diapers contain Sodium Polycrylate: a petrochemical-based additive. The Environmental Working Group rates this ingredient as exceeding the organization's "low hazard" threshold, and has stated that Sodium Polycrylate deserves a 3 out of 9 rating for "Moderate Hazard."

### Family Essentials Bundle

Honest has advertised a family essentials bundle of consumer products on Honest.com ("Family Essentials" or "Essentials"). Honest falsely represented all the Family Essentials products were all-natural. Honest repeated this false statement across its website: "all these products are made with the highest quality all-natural & organic ingredients." Honest offered the following Family

Essentials products on Honest.com: Honest Hand Soap, Honest Dish Soap, Honest Auto Dishwasher Gel, Honest Dishwasher Packs, Honest Conditioning Detangler, Honest Multi-Surface Cleaner, Honest Shampoo & Body Wash, and Honest Bubble Bath. Honest represented Family Essentials was a single product line, stating: "Choose from a growing line of natural, non-toxic personal care & home cleaning essentials." Honest continues to describe Essentials in its Frequently Asked questions webpage as "all derived from natural and organic ingredients."

Honest advertised the Essentials as natural on individual product labels and individual product pages on Honest.com. Honest labelled and advertised Honest Hand Soap individually as "Natural" on its Honest.com product page. Honest advertised Honest Dish Soap as "Natural" on the Target.com website and added that it has a "natural" formula. Honest also advertised the Honest Conditioning Detangler on Target.com for certain ingredients' ability to "naturally soften and nourish" Honest advertised Honest Auto Dishwasher Gel as "100% natural & biodegradable" on its Honest.com product page. Honest advertised Honest Dishwasher Packs' "Naturally-Derived Ingredients." Honest advertised the Honest Multi-Surface Cleaner as "naturally fresh," representing the cleaner "[r]epels dust naturally." Honest labeled Honest Shampoo & Body Wash "natural." Honest also labelled Honest Bubble Bath "natural." Each of these statements amplifies Honest's statement that all of the family essentials products are natural.

Contrary to Honest's representations in advertisements and labels, including in product descriptions on Honest.com, Honest's Family Essentials products contain non-natural ingredients as follows:

a. Honest Diapers
   a. Sodium Polycrylate- a petrochemical-based additive.
b. Honest Hand Soap
   a. Phenoxyethanol – a synthetic preservative
c. Honest Dish Soap
   a. Cocamidopropyl Betaine – a synthetic surfactant
   b. Methylisothiazolinone – a synthetic preservative
   c. Phenoxyethanol – see above
d. Honest Auto Dishwasher Gel
   a. Potassium Sorbate – a synthetic preservative
e. Honest Dishwasher Packs
   a. Polyvinyl Alcohol – a synthetic polymer
f. Honest Conditioning Detangler
   a. Caprylyl Glycol – a synthetic agent
g. Honest Multi-Surface Cleaner
   a. Metyhlisothiazolinone – see above
h. Honest Shampoo & Body Wash
   a. Caprylyl Glycol – see above
   b. Cocamidopropyl Hydroxysultaine – a synthetic surfactant
i. Honest Bubble Bath
   a. Caprylyl Glycol – see above

      b.  Cocamidopropyl Hydroxysultaine – see above

The Environmental Working Group rates many of these ingredients as exceeding the organization's "low hazard" threshold, according to the following ratings on the organization's informational website:

(a) Methylisothiazolinone - EWG Rating: 7 out of 9 – "High Hazard."
(b) Cocamidopropyl Betaine - EWG Rating: 4 out of 9 – "Moderate Hazard."
(c) Phenoxyethanol - EWG Rating: 4 out of 9 – "Moderate Hazard.
(d) Potassium Sorbate – EWG Rating: 3 out of 9 – "Moderate Hazard."

**Honest Sunscreen**

Honest oversold its sunscreen as effective, highly effective, and safe, and as providing "broad-spectrum mineral-based protection" or "natural mineral based sun protection." In practice, the Sunscreen was not remotely effective or safe. Ms. Schieffelin purchased the Sunscreen in June of 2015, and she and her family used and applied the Sunscreen diligently during an outdoors trip. To her entire family's dismay, Ms. Schieffelin, her husband, and her two year old child experienced severe sunburn. Honest's representations were material to the consuming public, as evidenced by Honest's nationwide advertising campaign to promote its sunscreen as effective, safe, and providing broad-spectrum sun protection. In the context of sunscreen, effective means the product works and prevents sunburn. Honest's sunscreen failed to produce this effect.

Based on the foregoing, PLEASE TAKE NOTICE that the Honest Company is in violation of the California Legal Remedies Act, and in breach of its express and implied warranties. We demand that within 30 days of receiving this letter, Honest agree to immediately and permanently discontinue its marketing practices described above and refund the purchase price paid by Honest consumers who purchased "natural" products that contained synthetic ingredients.

Please be advised that your failure to comply with this request within thirty (30) days may subject you to the following remedies:

- Declaratory and injunctive relief;
- An order to engage in a corrective advertising campaign;
- Actual damages;
- Restitution;
- Disgorgement of profits;
- Punitive and exemplary damages;
- Attorneys' fees;
- Litigation costs and expenses; and
- Pre-judgment and post-judgment interest.

     Finally, please allow this letter to serve as an initial litigation hold, and be advised that spoliation sanctions may be assess against your company if, *inter alia*, it modifies or deletes any web copy without first creating an exact, comprehensive copy of the visual appearance at the time of the modification or deletion, AND a copy of the corresponding HTML/CSS/Javascript code, placed into reliable data storage, including all relevant metadata, including for any webpages or webcopy Honest decides to change or amend as a result of the claims identified in this letter.

     Thank you for your time and consideration in this matter.

Very truly yours,

Nicholas A. Carlin

cc: William P. Donovan, Jr., Esq.

EXHIBIT B

1  NICHOLAS A. CARLIN (SB 112532)
   nac@phillaw.com
2  BRIAN S. CONLON (SB 303456)
   bsc@phillaw.com
3  PHILLIPS, ERLEWINE, GIVEN & CARLIN LLP
   39 Mesa Street, Suite 201
4  The Presidio
   San Francisco, CA   94129
5  Tel:   415-398-0900
   Fax:   415-398-0911
6

7  Leonard B. Simon (CSB #58310)
   The Law Offices of Leonard B. Simon
8  655 West Broadway, Suite 1900
   San Diego, CA  92101
9  Tel:   619-338-4549
   Fax:   619-231-7423
10 Email: lsimon@rgrdlaw.com

11 REBECCA A. PETERSON (SB 241858)
   rapeterson@locklaw.com
12 ROBERT K. SHELQUIST
   rkshelquist@locklaw.com
13 LOCKRIDGE GRINDAL NAUEN P.L.L.P
   100 Washington Avenue South, Suite 2200
14 Minneapolis, MN 55401
   Tel:   612-339-6900
15 Fax:   612 339-0981

16 Additional Counsel Listed on Signature Page

17 Attorneys for Plaintiffs

18

19                    **UNITED STATES DISTRICT COURT**

20                    **CENTRAL DISTRICT OF CALIFORNIA**

21

| CANDACE HIDDLESTONE and JULIE HEDGES, each individually and on behalf of all those similarly situated, | Case No: |
|---|---|
| Plaintiffs, | **DECLARATION OF CANDACE HIDDLESTONE** |
| v. | |
| THE HONEST COMPANY, INC. | |
| Defendant. | |

28

I, Candace Hiddlestone, declare and state as follows:

1. I am over the age of 18, and the named plaintiff in this class-action lawsuit. Unless otherwise stated, the facts contained in this declaration are based on my personal knowledge, and if called upon to do so, I can testify as to the facts contained herein.

2. The complaint in this action, filed concurrently with this declaration, is filed in the proper place for trial under California Civil Code §1780(d), because it is a county in which the Defendant The Honest Company, Inc. does business, and where a substantial portion of the marketing claims have occurred.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed this __19__ day of September, 2016 at La Jolla, California.

_____

Candace Hiddlestone

DECLARATION OF CANDACE HIDDLESTONE